1  AARON M. CLEFTON, Esq.  (SBN 318680)
   CLEFTON DISABILITY LAW
2  2601 Blanding Ave, Suite C
   #336
3  Telephone:  510/832-5001
   info@cleftonlaw.com
4
   Attorneys for Plaintiff
5  JOHN ANLIKER

6
                    UNITED STATES DISTRICT COURT
7
                  NORTHERN DISTRICT OF CALIFORNIA
8

9
   JOHN ANLIKER,                      CASE NO. 4:25-cv-6207
10                                     Civil Rights
          Plaintiff
11                                     COMPLAINT FOR PRELIMINARY AND
                                       PERMANENT INJUNCTIVE RELIEF AND
12                                     DAMAGES:
          v.
13
                                       1.  Violations of Americans with Disabilities Act
14                                         of 1990 (42 U.S.C. § 12101 *et seq.*)

15  CITY OF OAKLAND; FIVE RIVER        2.  Violation of the California Disabled Persons
    TRANSIT SOLUTIONS, INC.                Act (Cal. Civil Code § 54 *et seq.*)
16
                                       3.  Violation of the California Unruh Act (Cal.
17        Defendants.                      Civil Code §§ 51 and 52)

18                                     DEMAND FOR JURY TRIAL

19

20        Plaintiff JOHN ANLIKER complains of Defendants CITY OF OAKLAND and FIVE

21  RIVER TRANSIT SOLUTIONS, INC., and alleges as follows:

22        1.    **INTRODUCTION:**  On December 27, 2024, Plaintiff John Anliker, disabled due

23  to partial amputation of his leg, was discharged from Alta Bates Summit Medical Center after

24  undergoing a procedure to treat his Atrial Fibrillation ("AFib"). Upon discharge, the hospital

25  provided him with a voucher from Five River Transit and the City of Oakland for a taxi ride

26  home. Hospital staff then called him a taxi.  Plaintiff waited outside of the hospital in his

27  wheelchair.  When the taxi arrived, the driver got out, grabbed Plaintiff's medication from his

28  hand and tossed it into the back seat of the taxi.  Then, Plaintiff told the taxi driver that he would

                                         1

1  need to put his wheelchair in the back seat and sit in the front passenger seat beside the driver,

2  because of the size of the wheelchair. The taxi driver said "No." Then he closed the back door of

3  the taxi, and he drove off with Plaintiff's medication while leaving Plaintiff stranded at the

4  hospital.

5      2.      Defendants' refusal to accommodate Plaintiff was plainly because of his disability.

6  The driver said "No" to stowing Plaintiff's wheelchair in the backseat of the taxi and to Plaintiff

7  sitting in the front seat of the taxi. Plaintiff was excluded from using free taxi services offered by

8  the City of Oakland and Alta Bates Summit Medical Center.  He was discriminated against and

9  refused service because he is a disabled person who uses a wheelchair for locomotion.  As a result

10  of this denial of service, Plaintiff had to find another means of transportation from the hospital to

11  his home. Further, Defendants put Plaintiff's health at risk when the taxi driver took off with his

12  medication, forcing Plaintiff to miss doses until he could retrieve the medication from the lost and

13  found.

14      3.      As a result of Defendants' illegal acts, Plaintiff suffered denial of his civil rights

15  and suffered physical, mental, and emotional damages.  Plaintiff would like to use Defendants'

16  taxi services again, but he cannot do so until Defendants' policies are made accessible to disabled

17  individuals who need accommodations for stowing their wheelchairs, including revision of their

18  accommodation policies and necessary employee training and/or re-training. He has brought this

19  lawsuit to force Defendants to change their discriminatory and illegal policies, and to force

20  Defendants to compensate him for refusing to allow him to ride in their taxi because he is a

21  physically disabled person who needed the accommodation of stowing his wheelchair in the

22  backseat of the taxi while sitting in the front seat of the taxi.  Plaintiff seeks an injunction to

23  protect the rights of all disabled persons, including Plaintiff, when requesting accommodations

24  from Defendants' taxi services.

25      4.      **JURISDICTION:**  This Court has jurisdiction of this action pursuant to 28 USC

26  sections 1331 and 1343.  This Court has jurisdiction over the claims brought under California law

27  pursuant to 28 U.S.C. § 1367.

28      5.      **VENUE:**  Venue is proper in this court pursuant to 28 USC section 1391(b) and is

proper because the real property which is the subject of this action is located in this district and that Plaintiff's causes of action arose in this district.

6.    **INTRADISTRICT:**  This case should be assigned to the Oakland intradistrict because the incident which is the subject of this action occurred in this intradistrict and Plaintiff's causes of action arose in this intradistrict.

7.    **PARTIES:**   Plaintiff John Anliker is a "qualified" disabled person who requires use of a wheelchair for locomotion due to an amputated left leg above the knee.  He lives with disabilities that substantially limit one or more major life activities, most particularly his ability to walk.  Plaintiff is a qualified person with a disability as defined under federal and state law.  42 U.S.C. § 12102, 29 U.S.C. § 705(9)(B), and California Government Code § 12926(1).

8.    Defendants CITY OF OAKLAND; FIVE RIVER TRANSIT SOLUTIONS, INC., are and were at all times relevant to this Complaint the owners, operators, lessors and/or lessees of the subject business and program which provides taxi services for disabled patients discharged from hospitals in the City of Oakland, and the taxi service known as Five River Transit.

9.    The Taxi a place of "public accommodation" and a "business establishment" subject to the requirements *inter alia* of multiple categories of 42 U.S.C. section 12181(7) of the Americans with Disabilities Act of 1990, of California Civil Code sections 51 *et seq.*, and of California Civil Code sections 54 *et seq.*

10.    **GOVERNMENT CLAIM**:  On or about April 3, 2025, Plaintiff made a timely claim to the City of Oakland, a government entity, which was deemed rejected by operation of law on May 19, 2025, after 45 days passed without an acceptance or rejection of Plaintiff's claim by the State of California. The City of Oakland also expressly rejected Plaintiff's claim on June 24, 2025.

11.    **FACTUAL STATEMENT:**  On or about December 22, 2024, Plaintiff began experiencing symptoms of Atrial fibrillation ("AFib"). His heartbeat was around 128 beats per minute. He had also been experiencing other symptoms such as difficulty breathing and swollen hands. Plaintiff called an ambulance which transported him to Alta Bates Summit Medical Center in Oakland.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

12.     On December 24, 2024, Plaintiff underwent a procedure to fix the AFib. He was then discharged on December 27, 2024, at about 6:30 pm, after his heartbeat returned to regularity.  Plaintiff was told he will likely need another procedure after the doctors do additional testing and he has monitoring done at home.

13.     Upon discharge, Alta Bates Summit Medical Center gave Plaintiff two vouchers for a taxicab ride home. On information about belief, these vouchers are sponsored in part by the City of Oakland. Hospital staff called the taxi for Plaintiff while he was being discharged. A nurse from cardiac unit, Amy, wheeled Plaintiff outside and gave him the voucher for the taxi. The taxi was waiting for him. Plaintiff was holding a paper bag with medications prescribed for his heart condition as he was wheeled out.

14.     The taxi driver exited his vehicle and came around it to meet Plaintiff.  The taxi driver took Plaintiff's paper bag of medicine and discharge papers and dropped them in the backseat of his taxi.

15.     Plaintiff told the taxi driver that he would need to put his wheelchair in the back seat and sit in the front seat next to the driver because of the size of the wheelchair. To this reasonable accommodation request, the taxi driver said "No." Plaintiff asked what the problem was with his request. The taxi driver just repeated himself, saying "No" again.

16.     The taxi driver then closed the backseat door, got into his taxi and drove off with the Plaintiff's medicine in the backseat. Plaintiff yelled at him to stop, but the taxi driver never even looked back. Plaintiff's medications were a medical necessity. He needed the medicine to prevent stroke and complications from surgery. The driver took them away in the process of denying Plaintiff a reasonable accommodation. A medically dangerous insult to a callous civil rights injury.

17.     Plaintiff's request to sit in the front seat with the taxi driver while his wheelchair was folded up in the back seat of the car was a reasonable request to accommodate his disability. The taxi driver, Defendants' agent, refused to explain why he was denying Plaintiff's reasonable accommodation request or engage in any discussion of potential alternative solutions to transport Plaintiff and his wheelchair.

18.     The nurse, Amy, was with Plaintiff when this happened. She asked him whether he wanted her to wheel him inside, upstairs, or leave him outside. She was concerned about him having to wait for another ride, but Plaintiff wanted to wait outside because he had been in the hospital for so long.  He just wanted to get home.  A different nurse in the lobby called the dispatcher for another cab.

19.     While Plaintiff was waiting for another taxi to come pick him up, he called the dispatcher, which was listed on his taxi voucher as "Fiver Rivers Transit," contact number (510) 536-3000. Plaintiff was concerned about his medications. The dispatcher told Plaintiff that there was no way to reach the taxi driver because he was on the day shift, which had ended, and the dispatcher also told Plaintiff that the driver was not answering his phone. The fact that the dispatcher was aware of and apparently in control of the driver's schedule and would have been required to be available to return the medication during the day is evidence of an agency relationship.

20.     Plaintiff pressed the dispatcher, asking how he could get his medicine back from the taxi driver. The pharmacist had left the hospital, and Plaintiff could not get any replacement medications.  The dispatcher reiterated that there was no way to get ahold of the taxi driver. The dispatcher advised Plaintiff that all he could do was "hope that driver turns in his medicine to lost and found tomorrow." The fact there is a common lost and found centrally located for all drivers is a fact that further establishes an agency relationship between the driver and the Defendants.

21.     The dispatcher informed Plaintiff that the taxi drivers are hired by the City of Oakland, but the drivers then lease the taxicab from the cab company. This mutually beneficial business relationship makes all Defendants agents of one another in the advancement of a common venture.

22.     The dispatcher agreed to send another taxi to pick up Plaintiff at Alta Bates Summit Medical Center.

23.     Plaintiff went back inside the hospital lobby to wait for the second taxi.  He exited the hospital as soon as he saw the taxi had arrived. However, the taxi drove away as soon as Plaintiff came out of the lobby of the hospital. The taxi driver left without speaking to Plaintiff.

He called the dispatcher again, and the dispatcher instructed Plaintiff to stay outside of the hospital to wait for another taxi to arrive.

24.    Not wanting to wait outside in the dark, Plaintiff called a friend who arranged for an Uber to take him home. Plaintiff did not get home until 10:00 pm, after waiting over 2.5 hours for at the hospital for a taxi to take him home.

25.    The next morning Plaintiff awoke at 6:00 am, worried about the fact that he had been unable to take his medication as instructed by his medical team. Plaintiff called the dispatcher and spoke to the dayshift dispatcher to inquire about whether his medication had been turned into the lost and found. Plaintiff also complained about his experience with the taxis the previous night. The dispatcher claimed that it is well within the rights of the taxi driver to tell Plaintiff that he could not sit in the front seat of the taxi while being transported. Protecting the interests of the taxi driver is another fact that evidences an agency relationship between driver and the Defendant dispatcher company. The dispatcher told Plaintiff that they would drop medication off at his home sometime that day and to expect the driver around 1 to 2 pm.

26.    The dispatcher told Plaintiff not to call again, said goodbye and hung up. Plaintiff called back to let the dispatcher know how the driver could contact him when he arrived to drop off the medication because he would need to open the gate at his apartment building to allow the taxi driver access to his home. The dispatcher chastised him for calling back, and said when he had an available driver, he would send out the medications.

27.    Plaintiff received his medication from the taxi company at 2:41 pm on December 28, 2024. Plaintiff had missed his morning dose of six different medicines. He took them as soon as he got them back, but he was very stressed about the delay in taking this lifesaving medication. This suit followed.

**FIRST CAUSE OF ACTION:**
**VIOLATION OF TITLE II, SUBPART A OF THE AMERICANS WITH DISABILITIES**
**ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**
**(*Against Defendant City of Oakland*)**

28.    Plaintiff repleads and incorporates by reference, as if fully set forth again herein,

the factual allegations contained in Paragraphs 1 through 27, above, and incorporates them herein by reference as if separately repled hereafter.

29.    In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous." 42 U.S.C. § 12101(a).

30.    At all times herein mentioned, Plaintiff was entitled to the protections of the "Public Services" provisions of Title II of the ADA, Subpart A, which prohibits discrimination by any public entity as defined by 42 USC section 12131. Pursuant to 42 USC 12132, section 12132 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the "services, programs or activities" of a public entity, or be subjected to discrimination by such entity. Plaintiff was at all times relevant herein a qualified individual with a disability for all purposes under the ADA.

31.    In violation of Title II of the ADA, Defendant has failed to ensure that individuals with physical disabilities such as the Plaintiff herein are not excluded from "services, programs and activities" at the subject facilities and property. By reason of Defendant City of Oakland's failure to remove policy barriers to access at the subject facilities so as to render them "accessible to and useable by" disabled persons who use wheelchair, despite actual notice of the inaccessible conditions, and by its policy decisions as above described, including acts and omissions by any predecessors in interest, Defendant City of Oakland has discriminated against Plaintiff in violation of Title II of the ADA and the regulations adopted to implement the ADA. With relation to damages claimed under Title II of the ADA, each such instance of discrimination is

alleged to have been intentional and/or has been created and maintained with deliberate indifference to the effect upon Plaintiff and other similarly disabled persons.

32.     As a result of such intentional discrimination, in violation of section 12132 of the ADA, Plaintiff is entitled to the remedies, procedures and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 USC 794a), as provided by section 12133 of the ADA

33.     On information and belief, to the date of filing of this Complaint, Defendant City of Oakland has failed to make the facilities and property as described herein accessible to and usable by physically disabled persons who use wheelchairs, as required by law, and have failed to adopt policies to assure that disabled persons are provided full and equal access, including policies and regulations protecting disabled individuals who request accommodations for their disability in public accommodations.

34.     Plaintiff requests that an injunction be ordered requiring that Defendant City of Oakland make all such facilities and properties herein described accessible to and usable by mobility impaired disabled persons.

35.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

36.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities."  42 U.S.C. § 12182(b)(2)(A)(ii).

37.     Defendant City of Oakland has a policy and practice of denying and restricting access of disabled persons to their taxi services by not requiring its taxi drivers to make reasonable accommodations for disabled passengers who need to sit in the front seat of the taxi.

38.     On information and belief, Defendant City of Oakland continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant's premises, in violation of the ADA.

39.     In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"),

Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

40.     **DAMAGES:**  Damages are available under the Title II of the ADA upon a showing of intentional discrimination.  *See* 42 U.S.C. § 12133; 29 U.S.C. § 794a(a)(2); *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998); *Alexander v. Sandoval*, 531 U.S. 1049, 1517 (2001).  In order to prove intentional discrimination, Plaintiff must show that Defendant City of Oakland acted with "deliberate indifference" in violating his rights under Title II of the ADA. *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001).

Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that the likelihood. *City of Canton v. Harris,* 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1988) . . . When the plaintiff has alerted the public entity to his need for accommodation (**or where the need for accommodation is obvious, or required by statute or regulation**), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test.

*Id.* 260 F.3d at 1139.

41.     Defendant City of Oakland has a statutory duty to ensure that its programs are readily accessible to persons with disabilities who need reasonable accommodations, such as Plaintiff. 29 C.F.R. § 35.130(b)(7).  Defendant City of Oakland refused to allow Plaintiff to use the services of the taxi program despite Plaintiff's clear explanation that he needed to sit in the front seat so that he could stow his wheelchair in the back seat of the taxi.  Defendant City of Oakland refused to make any accommodations for Plaintiff.  The need for accommodation in this

matter is both "clearly obvious" and "required by statute or regulation," and therefore meets and likely exceeds the standard for an award of damages under the deliberate indifference standard. *Duvall*, 260 F.3d at 1139. Further, Defendant City of Oakland was on *actual* notice of the need for accommodation because Plaintiff explicitly informed Defendant City of Oakland's representative that he needed an accommodation to allow him to use the taxi service, due to his disability. Defendant City of Oakland received this information and among the possible alternatives available, they then deliberately denied Plaintiff access to the taxi services.

42.     Defendant City of Oakland's establishment of its discriminatory policy to deny services to persons with disabilities who need accommodations, and its implementation of such a discriminatory policy against Plaintiff, indicate intentional discrimination toward Plaintiff and deliberate indifference for his rights and safety. Plaintiff suffered damages as above described as a result of Defendant City of Oakland's violations. Damages are ongoing based on his deterrence from returning to use taxi services and will continue until Defendant City of Oakland adopts a compliant policy and trains its employees.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

## SECOND CAUSE OF ACTION:
## VIOLATION OF TITLE II, PART B OF THE AMERICANS WITH DISABILITIES ACT
## 42 U.S.C. § 12101, *et seq.*
### (Against Defendant City of Oakland)

43.     Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 42 of this Complaint and incorporates them herein as if separately re-pleaded.

44.     Part B of Title II applies specifically to discrimination in transportation. *See* 42 U.S.C. §§ 12141-12165 (Title II, Part B).

45.     Department of Justice Regulations enacted pursuant to this Part state that "[n]o entity shall discriminate against an individual with a disability in connection with the provision of transportation service." 49 C.F.R. 37.5(a).

46.     Defendant City of Oakland operates a demand responsive transportation program

by providing free taxi rides for disabled individuals. 42 U.S.C. § 12141 (defining "designated public transportation" and "demand responsive system"). However, the taxi program does not ensure that Plaintiff and similarly situated individuals are accommodated by the taxi company and taxi drivers when accommodations are necessary.

47.    These violations include failure make Defendant's "designated public transportation" accessible. 42 USC 12141(2); 42 USC 12146; 42 USC 12147.

48.    Defendant City of Oakland's policy/practice violates 49 C.F.R., Part 37, Subpart G §§ 37.167(d), 37.173.

49.    Department of Justice regulations implementing Part B of Title II also require Defendant City of Oakland to "make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to avoid discrimination on the basis of disability or provide program accessibility to their services." See 49 C.F.R. § 37.5(i)(3); see also 49 C.F.R. § 37.169.

50.    Plaintiff was and is excluded from riding in the taxi's provided by the City of Oakland because he requires an accommodation to stow his wheelchair in the back seat of the taxi while he sits in the front seat.  Plaintiff has asked that Defendant City of Oakland reasonably modify its policies, practices, and procedures to avoid this discrimination, but Defendant City of Oakland has refused to make the needed modifications, and so, have violated the Part B's reasonable modifications requirement. *See Id.*

51.    Part B of Title II defines discrimination to include an entity's failure "to operate a designated public transportation program or activity" conducted in existing facilities so that, "when viewed in its entirety, the program or activity is readily accessible to and usable by individuals with disabilities." 42 U.S.C. § 12148; *see also* 49 C.F.R. § 37.61.

52.    Defendant City of Oakland cannot contract away their liability under Title II Part B.  Where public entities operate a fixed route transportation system through a contractual arrangement with a private entity they must ensure "that the private entity meets the requirements of [. . . Title II and its Regulations] that would apply to the public entity if the public entity itself provided the service." 49 C.F.R. § 37.23(b).

11

WHEREFORE, Plaintiff requests relief as outlined below.

**THIRD CAUSE OF ACTION:**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**(42 USC §§ 12101 *et seq.*)**
***(Against Five River Transit Solutions, Inc.)***

53.     Plaintiff repleads and incorporates by reference, as if fully set forth again herein, the factual allegations contained in Paragraphs 1 through 52, above, and incorporates them herein by reference as if separately repled hereafter.

54.     In 1990 Congress passed the Americans with Disabilities Act after finding that laws were needed to more fully protect "some 43 million Americans with one or more physical or mental disabilities; that historically society has tended to isolate and segregate individuals with disabilities;" that "such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem"; that "the Nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals"; and that "the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous."  42 U.S.C. § 12101(a).

55.     The ADA provides, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 USC § 12182.

56.     Plaintiff is a qualified individual with a disability as defined in the Rehabilitation Act and in the Americans with Disabilities Act of 1990.

57.     The taxi cab is a public accommodation within the meaning of Title III of the ADA.  42 U.S.C. § 12181(7)(G).

58.     The ADA prohibits, among other types of discrimination, "failure to make reasonable modifications in policies, practices or procedures when such modifications are

necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities." 42 U.S.C. § 12182(b)(2)(A)(ii).

59.    Defendant Five River Transit Solutions, Inc. has a policy and practice of denying access to disabled patrons who request accommodations.

60.    On information and belief, as of the date of Plaintiff's attempt to use the taxi services of Defendant Five River Transit Solutions, Inc. on or about December 27, 2024, Defendant Five River Transit Solutions, Inc. continues to deny full and equal access to Plaintiff and to discriminate against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of Defendant Five River Transit Solutions, Inc.'s premises, in violation of the ADA.

61.    In passing the Americans with Disabilities Act of 1990 (hereinafter "ADA"), Congress stated as its purpose:

It is the purpose of this Act

(1) to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities;

(3) to ensure that the Federal Government plays a central role in enforcing the standards established in this Act on behalf of individuals with disabilities; and

(4) to invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 USC § 12101(b).

62.    As part of the ADA, Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (42 USC § 12181 *et seq.*).  The subject property and facility is one of the "private entities" which are considered "public accommodations" for purposes of this title, which includes but is not limited to any "sales or rental establishment." 42 USC § 12181(7)(E).

63.    The ADA states that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation." 42 U.S.C. § 12182.  The specific prohibitions against discrimination include, but are not limited to the following:

§ 12182(b)(1)(A)(ii): "Participation in Unequal Benefit. - It shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded to other individuals."

§ 12182(b)(2)(A)(ii): "a failure to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities...;"

§ 12182(b)(2)(A)(iii): "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied service, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services...;"

§ 12182(b)(2)(A)(iv): "a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities... where such removal is readily achievable;"

§ 12182(b)(2)(A)(v): "where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages, or accommodations available through alternative methods if such methods are readily achievable."

64.    The acts and omissions of Defendant Five River Transit Solutions, Inc. set forth herein were in violation of Plaintiff's rights under the ADA and the regulations promulgated thereunder, 28 C.F.R. Part 36 *et seq*.

65.    The removal of each of the policy barriers complained of by Plaintiff as hereinabove alleged, were at all times herein mentioned "readily achievable" under the standards of sections 12181 and 12182 of the ADA.  As noted hereinabove, removal of each and every one

of the policy barriers complained of herein were already required under California law.  In the event that removal of any barrier is found to be "not readily achievable," Defendant Five River Transit Solutions, Inc. still violated the ADA, per section 12182(b)(2)(A)(v) by failing to provide all goods, services, privileges, advantages and accommodations through alternative methods that were "readily achievable."

66.     On information and belief, as of the dates of Plaintiff's encounters at the premises and as of the filing of this Complaint, Defendant Five River Transit Solutions, Inc.'s actions and policies have denied and continue to deny full and equal access to Plaintiff and to other disabled persons who need accommodations, which violates Plaintiff's right to full and equal access and which discriminates against Plaintiff on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of 42 U.S.C. sections 12182 and 12183 of the ADA.

67.     Defendant Five River Transit Solutions, Inc.'s actions continue to deny Plaintiff's rights to full and equal access by deterring Plaintiff from patronizing the taxi services and discriminated and continue to discriminate against him on the basis of his disabilities, thus wrongfully denying to Plaintiff the full and equal enjoyment of Defendant Five River Transit Solutions, Inc.'s goods, services, facilities, privileges, advantages and accommodations, in violation of section 12182 of the ADA.  42 U.S.C. § 12182.

68.     Pursuant to the Americans with Disabilities Act, 42 U.S.C. sections 12188 *et seq.*, Plaintiff is entitled to the remedies and procedures set forth in section 204(a) of the Civil Rights Act of 1964, 42 USC 2000(a)-3(a), as Plaintiff is being subjected to discrimination on the basis of his disabilities in violation of sections 12182 and 12183 of this title.  On information and belief, Defendant Five River Transit Solutions, Inc. has continued to violate the law and deny the rights of Plaintiff and other disabled persons to "full and equal" access to this public accommodation since on or before Plaintiff's encounters.  Pursuant to section 12188(a)(2).

[i]n cases of violations of § 12182(b)(2)(A)(iv) and § 12183(a)... injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title.  Where appropriate, injunctive relief shall also include requiring the provision of an

auxiliary aid or service, modification of a policy, or provision of alternative methods, to the extent required by this title.

69.    Plaintiff seeks relief pursuant to remedies set forth in section 204(a) of the Civil Rights Act of 1964 (42 USC 2000(a)-3(a)), and pursuant to Federal Regulations adopted to implement the Americans with Disabilities Act of 1990.  Plaintiff is a qualified disabled person for purposes of section 12188(a) of the ADA who is being subjected to discrimination on the basis of disability in violation of Title III and who has reasonable grounds for believing he will be subjected to such discrimination each time that he may use the property and premises, or attempt to patronize the taxi company in light of Defendant Five River Transit Solutions, Inc.'s policy barriers.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**FOURTH CAUSE OF ACTION:**
**VIOLATION OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT OF 1990**
**Discrimination in Specified Public Transportation by Private Entity**
*(42 U.S.C. § 12184 et seq.)*
(***Against Defendant Five River Transit Solutions, Inc.***)

70.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in Paragraphs 1 through 69 of this Complaint and incorporates them herein as if separately re-pleaded.

71.    Section 12184 of Title III of the ADA states in relevant part that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of specified public transportation services provided by a private entity that is primarily engaged in the business of transporting people and whose operations affect commerce."  42 U.S.C. § 12184(a).

72.    Defendant Five River Transit Solutions, Inc. provides taxi services throughout the Bay Area.  As such, Defendant is a private entity that are primarily engaged in the business of transporting people and whose operations effect commerce pursuant to 42 U.S.C. section 12184(a).

73.    Defendant Five River Transit Solutions, Inc.'s taxi services are a specified public transportation service subject to 42 U.S.C. § 12184(a).

74.    Private entities operating such services must "make reasonable modifications in policies, practices or procedures when such modifications are necessary to afford [their] goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities . . ." *See* 42 U.S.C. § 12184(b)(2)(A) (mandating compliance with 42 U.S.C.12182(b)(2)(A)(ii)); 42 U.S.C. § 12182(b)(2)(A)(ii)); 28 C.F.R. § 36.302(a); 42 U.S.C. § 12184(b)(2)(A)*; see also* 28 C.F.R. § 36.302(a).

75.    Plaintiff has requested reasonable and necessary modification of Defendant Five River Transit Solutions, Inc.'s policy of not allowing passengers to sit in the front seat of a taxi, so that he may enjoy the benefits of the taxi services. By refusing to modify its accommodation policy so as to provide people with disabilities, including Plaintiff, full and equal access to the service it provides, Defendant Five River Transit Solutions, Inc. failed to meet their obligations under this section.

76.    Defendant Five River Transit Solutions, Inc.'s policy/practice violates 49 C.F.R., Part 37, Subpart G §§ 37.167(d), 37.173.

77.    As a result of Defendant Five River Transit Solutions, Inc.'s wrongful conduct, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. § 12188(a)(2), requiring Defendant Five River Transit Solutions, Inc. to remedy the discrimination.

78.    Plaintiff is entitled to an award of attorneys' fees and costs under 42 U.S.C. §§ 12188 and 12205.

WHEREFORE, Plaintiff prays for relief as hereinafter stated.

**FIFTH CAUSE OF ACTION:**
**DAMAGES AND INJUNCTIVE RELIEF**
**FOR DENIAL OF FULL AND EQUAL ACCESS TO PUBLIC FACILITIES  IN A PUBLIC ACCOMMODATION**
**(Civil Code §§ 54 *et seq.*)**
**(*Against All Defendants*)**

79.    Plaintiff re-pleads and incorporates by reference, as if fully set forth hereafter, the factual allegations contained in Paragraphs 1 through 78 of this Complaint and all paragraphs of the third and fourth causes of action, as plead infra, incorporates them herein as if separately re-pleaded.

17

80.     At all times relevant to this Complaint, California Civil Code section 54(a) has provided that:

> (a) Individuals with disabilities or medical conditions have the same right as the general public to the full and free use of the streets, highways, sidewalks, walkways, public buildings, . . . public facilities and other public places.

81.     At all times relevant to this Complaint, California Civil Code section 54.1 has provided that physically disabled persons are not to be discriminated against because of physical handicap or disability in the use of a public accommodation:

> . . . [P]hysically disabled persons shall be entitled to full and equal access, as other members of the general public, to accommodations, advantages, facilities and privileges of all common carriers, airplanes, motor vehicles. . . or any other public conveyances or modes of transportation, telephone facilities, hotels, lodging places, places of public accommodation, and amusement or resort, and other places to which the general public is invited, subject only to the conditions or limitations established by law, or state or other federal regulations, and applicable alike to all other persons.

The discrimination by Defendants against Plaintiff on the basis of his disability constitutes a violation of the general anti-discrimination provision of Civil Code sections 54 and 54.1.

82.     Any violation of the Americans with Disabilities Act of 1990 (as pled in the First, Second, Third and Fourth Causes of Action) also constitutes a violation of sections 54 (c) and 54.1(d) of the California Civil Code, thus independently justifying an award of damages and injunctive relief pursuant to California law.  Plaintiff alleges that he has been denied such full and equal access as required by California law which incorporates the ADA, including but not limited to section 204.

83.     Plaintiff has no adequate remedy at law and, unless the relief requested herein is granted, Plaintiff and other disabled persons will continue to suffer irreparable harm as a result of Defendants' failure to fulfill their obligations to provide meaningful access to Defendants' taxi services.

84.     Wherefore Plaintiff asks this Court to preliminarily and permanently enjoin any continuing refusal by Defendants to grant full and equal access to Plaintiff in the respects complained of and to require Defendants to comply forthwith with the applicable statutory requirements relating to access for disabled persons.  Civil Code section 54.3 provides that any

person or corporation who denies or interferes with admittance to or enjoyment of the public

facilities as specified in sections 54 and 54.1 or otherwise interferes with the rights of an

individual with a disability is liable for each offense for the actual damage and any amount as

may be determined by a court or jury up to a maximum of three times the amount of actual

damages but in no case less than $1,000 per violation, and such attorney fees as may be

determined by the Court in addition thereto.  Plaintiff alleges that Defendants failed to provide

legally required access to the taxi program as a violation on each specified day he attempted to

access the services provided by Defendants, or was deterred from attempting such access and

further requests that the Court award damages pursuant to Civil Code section 54.3 and attorney

fees, litigation expenses and costs pursuant to Civil Code §§ 54.3 and 55, California Code of Civil

Procedure § 1021.5 and other law, all as hereinafter prayed for.

85.     **DAMAGES:**  As a result of the denial of equal access to the taxi program and due

to the acts and omissions of Defendants in owning, operating, and/or maintaining the subject

programs, Plaintiff has suffered multiple violations of his civil rights, including but not limited to

rights under Civil Code sections 54 and 54.1, all to his damages per Civil Code section 54.3, as

hereinafter stated.  Defendants' actions and omissions to act constitutes discrimination against

Plaintiff on the sole basis that he was and is physically disabled and unable, because of the

barriers created and/or maintained by Defendants in violation of the subject laws, and/or due to

said Defendant's multiple policy violations of Civil Code sections 54 and 54.1, to use this taxi

program on a full and equal basis as other persons.

86.     **FEES AND COSTS:**  As a result of Defendants' acts, omissions and conduct,

Plaintiff has been required to incur attorney fees, litigation expenses and costs as provided by

statute in order to enforce Plaintiff's rights and to enforce provisions of the law protecting access

for disabled persons and prohibiting discrimination against disabled persons.  Plaintiff therefore

seeks recovery of all reasonable attorney fees, litigation expenses and costs pursuant to the

provisions of California Civil Code sections 54.3 and 55.  Additionally, Plaintiff's lawsuit is

intended to require that Defendants make the taxi program accessible to all disabled members of

the public, justifying "public interest" attorney fees, litigation expenses and costs pursuant to the

1    provisions of California Code of Civil Procedure section 1021.5 and other applicable law.

2        WHEREFORE, Plaintiff prays the Court grant relief as requested below.

3

**SIXTH CAUSE OF ACTION:**
4    **VIOLATION OF CALIFORNIA LAW INCLUDING: THE UNRUH ACT, CIVIL
CODE SECTIONS 51 AND 52, AND THE AMERICANS WITH DISABILITIES
5        ACT AS INCORPORATED
BY CIVIL CODE SECTION 51(f)**
6    *(Against Defendant Five River Transit Solutions, Inc.)*

7        87.    Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein,

8    the allegations contained in Paragraphs 1 through 86 of this Complaint and incorporates them

9    herein as if separately re-pleaded.

10        88.    At all times relevant to this action, the Unruh Civil Rights Act, California Civil

11    Code § 51(b), provided that:

12        All persons within the jurisdiction of this state are free and equal, and no matter
what their sex, race, color, religion, ancestry, national origin, disability, or medical
13        condition are entitled to the full and equal accommodations, advantages, facilities,
privileges, or services in all business establishments of every kind whatsoever.
14

15        89.    California Civil Code section 52 provides that the discrimination by Defendant

16    Five River Transit Solutions, Inc. against Plaintiff on the basis of his disability constitutes a

17    violation of the general anti-discrimination provisions of sections 51 and 52.

18        90.    Each of Defendant Five River Transit Solutions, Inc.'s discriminatory acts or

19    omissions constitutes a separate and distinct violation of California Civil Code section 52, which

20    provides that:

21        Whoever denies, aids or incites a denial, or makes any discrimination or distinction
contrary to section 51, 51.5, or 51.6 is liable for each and every offense for the
22        actual damages, and any amount that may be determined by a jury, or a court sitting
without a jury, up to a maximum of three times the amount of actual damage but in
23        no case less than four thousand dollars ($4,000), and any attorney's fees that may
be determined by the court in addition thereto, suffered by any person denied the
24        rights provided in Section 51, 51.5, or 51.6.
25

26        91.    Any violation of the Americans with Disabilities Act of 1990 constitutes a

27    violation of California Civil Code section 51(f), thus independently justifying an award of

28    damages and injunctive relief pursuant to California law, including Civil Code section 52.  Per

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES

1  Civil Code section 51(f), "A violation of the right of any individual under the Americans with

2  Disabilities Act of 1990 (Public Law 101-336) shall also constitute a violation of this section."

3       92.     The actions and omissions of Defendant Five River Transit Solutions, Inc. as

4  herein alleged constitute a denial of access to and use of the described public facilities by disabled

5  persons who need accommodations within the meaning of California Civil Code sections 51 and

6  52.  As a proximate result of Defendant Five River Transit Solutions, Inc.'s action and omissions,

7  Defendant Five River Transit Solutions, Inc. has discriminated against Plaintiff in violation of

8  Civil Code sections 51 and 52, and are responsible for statutory, and compensatory damages to

9  Plaintiff, according to proof.

10      93.     Defendant, in engaging in the conduct set forth above, refused to do business with

11  Plaintiff and refused Plaintiff service.  Plaintiff alleges on information and belief that such refusal

12  and denial of service was due to his disability in violation of Civil Code § 51.5.

13      94.     **FEES AND COSTS:**  As a result of Defendant Five River Transit Solutions,

14  Inc.'s acts, omissions and conduct, Plaintiff has been required to incur attorney fees, litigation

15  expenses and costs as provided by statute in order to enforce Plaintiff's rights and to enforce

16  provisions of law protecting access for disabled persons and prohibiting discrimination against

17  disabled persons.  Plaintiff therefore seeks recovery of all reasonable attorney fees, litigation

18  expenses and costs pursuant to the provisions of California Civil Code sections 51 and 52.

19  Additionally, Plaintiff's lawsuit is intended to require that Defendant make its facilities and

20  policies accessible to all disabled members of the public, justifying "public interest" attorney fees,

21  litigation expenses and costs pursuant to the provisions of California Code of Civil Procedure

22  section 1021.5 and other applicable law.

23      95.     Plaintiff suffered damages as above described as a result of Defendant's violations.

24           WHEREFORE, Plaintiff prays for relief as hereinafter stated.

25

26                          <u>**PRAYER**</u>

27           Plaintiff has no adequate remedy at law to redress the wrongs suffered as set forth in this

28  Complaint.  Plaintiff has suffered and will continue to suffer irreparable injury as a result of the

1    unlawful acts, omissions, policies, and practices of the Defendants as alleged herein, unless

2    Plaintiff is granted the relief he requests.  Plaintiff and Defendants have an actual controversy

3    and opposing legal positions as to Defendants' violations of the laws of the United States and the

4    State of California. The need for relief is critical because the rights at issue are paramount under

5    the laws of the United States and the State of California.

6        WHEREFORE, Plaintiff John Anliker prays for judgment and the following specific

7    relief against Defendants:

8        1.    An order enjoining Defendants, its agents, officials, employees, and all persons

9    acting in concert with them:

10            a.   From continuing the unlawful acts, conditions, and practices described in this

11                 Complaint;

12            b.   To modify their policies and practices to accommodate disabled passengers in

13                 conformity with federal and state law, and to advise Plaintiff that he will be

14                 accommodate and will not be excluded should he desire to use the taxi services;

15            c.   That the Court issue preliminary and permanent injunction directing Defendants as

16                 current owners, operators, lessors, and/or lessees and/or their agents of the subject

17                 property and premises to modify the above described property, premises, policies

18                 and related policies and practices to provide full and equal access to all persons,

19                 including persons with physical disabilities; and issue a preliminary and permanent

20                 injunction pursuant to ADA section 12188(a) and state law directing Defendants to

21                 provide facilities usable by Plaintiff and similarly situated persons with

22                 disabilities, and which provide full and equal access, as required by law, and to

23                 maintain such accessible facilities once they are provided and to train Defendants'

24                 employees and agents in how to recognize disabled persons and accommodate

25                 their rights and needs;

26            d.   An order retaining jurisdiction of this case until Defendants have fully complied

27                 with the orders of this Court, and there is a reasonable assurance that Defendants

28                 will continue to comply in the future absent continuing jurisdiction;

2.      An award to Plaintiff of all appropriate damages, including but not limited to statutory damages, general damages in amounts within the jurisdiction of the Court, all according to proof;

3.      An award to Plaintiff pursuant to 42 U.S.C. § 12205, 29 U.S.C. § 794a, California Civil Code §§ 52 and 54.3, California Code of Civil Procedure § 1021.5, and as otherwise permitted by law, of the costs of this suit and reasonable attorneys' fees and litigation expenses;

4.      An award of prejudgment interest pursuant to Civil Code § 3291;

5.      Interest on monetary awards as permitted by law; and

6.      Grant such other and further relief as this Court may deem just and proper.

Date: July 23, 2025                          CLEFTON DISABILITY LAW

                                              ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JOHN ANLIKER

## JURY DEMAND

Plaintiff hereby demands a trial by jury for all claims for which a jury is permitted.

Date: July 23, 2025                          CLEFTON DISABILIT LAW

                                              ___/s/ Aaron M. Clefton___
                                             By AARON M. CLEFTON, Esq.
                                             Attorneys for Plaintiff
                                             JOHN ANLIKER

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES